**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ACE HARDWARE INTERNATIONAL HOLDINGS, LTD. as assignee of ACE HARDWARE CORPORATION, | CASE NO. 11-03928 |
| Plaintiff, | |
| v. | Honorable Amy J. St. Eve |
| MASSÓ EXPO CORP. and CAGUAS LUMBER YARD, INC., | RE:   CIVIL  ACTION |
| Defendants. | |

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ACE HARDWARE INTERNATIONAL HOLDINGS, LTD. as assignee of ACE HARDWARE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> MASSO EXPO CORP. and CAGUAS LUMBER YARD, INC., <br><br> Defendants. | CASE NO. 11-03928 <br><br> Honorable Amy J. St. Eve <br><br> RE:   CIVIL  ACTION |

## TABLE OF CONTENTS

I.   **Introduction** ...................................................................................................................1

II.  **Argument** ......................................................................................................................3

    A. **Massó's former membership in the cooperative with Ace is irrelevant to the determination of personal jurisdiction in this case**..........................................3

    B. **Ace's unilateral activities in Illinois are irrelevant to this Court's determination of specific jurisdiction** ......................................................................................7

    C. **The execution of the Membership Agreements does not establish personal jurisdiction over Massó** ............................................................................8

    D. **The shipment of paint from Illinois is a unilateral activity over which Massó has no control and cannot serve as a predicate for personal jurisdiction** ...............................10

    E. **Plaintiff has not refuted Massó's argument to the effect that the forum-selection clause in the Membership Agreements is not self-executing in the abasence of minimum contacts**.............................................................................................11

    F. **In the alternative, this action should be transferred to the District Court of Puerto Rico pursuant to 28 U.S.C. §1404** ...........................................................................14

    1.   The convenience of the parties and the interests of justice favor transfer. ..........14

    2.   The situs of material events if Puerto Rico..............................................................17

    3.   Public factors also favor transfer. ........................................................................18

**III.**    **Conclusion** ...........................................................................................................18,19

**IV.**    **Signatures** .................................................................................................................19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ACE HARDWARE INTERNATIONAL
HOLDINGS, LTD. as assignee of ACE
HARDWARE CORPORATION,

Plaintiff,

v.

MASSÓ EXPO CORP. and CAGUAS
LUMBER YARD, INC.,

Defendants.

CASE NO. 11-03928

Honorable Amy J. St. Eve

RE:   CIVIL  ACTION

## **TABLE OF AUTHORITIES**

### Cases

*American Roller Co., LLC v. Foster Adams Leasing, LLP,* 421 F.Supp.2d 1109
(N.D.Ill. 2006)..................................................................................................................12

*Antilles Cement Corp. v. Aalborg Portland A/S,* 526 F.Supp.2d 205, 209 (D.P.R. 2007) ...........13

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 475, 478 (1985)...................................7, 8, 9

*Citadel Group Ltd. v. Washington Regional Medical Center,* 536 F.3d 757, 763 (2008).............10

*Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.,*
230 F.3d 934, 943 (7th Cir. 2000) .................................................................................3

*Coffey v. Van Dorn Iron Works,* 796 F. 2d 217, 220 (7th Cir. 1986) .............................................16

*Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 87 S. Ct. 1776, 18 L. Ed. 2d
886 (1967) .......................................................................................................................14

*Continental Grain Co. v. The FBL,* 585, 364 U.S. 19, 26 (1960)....................................................16

*Corus International Trading Limited v. Eregli Demir ve Celik Fabrikalari, T.A.S,* 765 F.Supp.2d
1079, 1084 (N.D. Ill., 2011)..........................................................................................4

*Dayton Superior Corp. v. Spa Steel Products, Inc.*, 585 F.Supp.2d 1041 (N.D.Ill. 2008) .......10,11

*Edelson v. Ch'ien*, 352 F.Supp.2d 861, 868 (N.D. Ill., 2005)..........................................................4

*Green v. Safeco Life Insurance Co.*, 312 Ill.App.3d 577, 581 (2000) ............................................13

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ..............................................................................7

*Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) ...........................16

*Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 905 (N.D.Ill.2003).........................................................................................................................8,9

*John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors, Inc.*, 22 F.3d 51 (2d Cir. 1994).........................................................................................................................12

*Keppen v. Burlington Northern R. Co.*, 749 F.Supp. 181, 183 (N.D.Ill. 1990) ...........................15

*Kim v. Kim*, 324 F. Supp. 2d 628 (E.D.Pa. 2004) ....................................................................16,17

*KPMG Consulting, Inc. v. LSQ II, LLC*, 2002 WL 1543907 (S.D.N.Y. 2002) .......................16,17

*Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979)...........................................................................................................................10, 11

*Landis v. Warner Chilcott (US), LLC*, 2010 WL 5373664 (N.D.Ill. 2010) ...................................14

*MAC Funding Corp. v. Northeast Impression, Inc.*, 215 F.Supp.2d 978 (N.D.Ill. 2002) ...........5, 7

*Maxon Engineering*, 2001 PR App. Lexis 2028 ............................................................................14

*Medj USA v. Jobst Inst.*, 791 F.Supp. 208, 210-11 (N.D.Ill.1992) ................................................16

*M/S Breman v. Zapata Off-Shore Co.*,407 U.S. 1 (1972) .............................................................13

*Northwestern Nat. Ins. Co. v. Donovan*, 916 F.2d 372 (7th Cir. 1990).......................................12

*Pres-Kap, Inc. v. System One, Direct Access, Inc.*, 636 So.2d 1351, 1353 (Fla.App. 3 Dist. 1994)...................................................................................................................................9

*Puerto Rico Surgical Technologies, Inc. v. Applied Medical Distribution Corp.*, 2010 WL 4237927 (D.P.R. 2010) .................................................................................................................13

*Saxena v. Virtualabs, Inc.*, 2002 WL 992636 (N.D. Ill. 2002) ....................................................12

*Trippe Mfg. Co. v. Am. Power Conversion Corp.,* 46 F.3d 624, 629 (7th Cir. 1995) ....................16

*TruServ Corp. v. ST Yards, Inc.* 2001 WL 743642 (N.D.Ill. 2001) ...............................................3, 6

*RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997)....................................4, 7, 9

*Re-Ace, Inc. v. Wheeled Coach Industries, Inc.,* 363 F.3d 51, 55-56 (1st Cir. 2004)....................18

*United Financial Mortgage v. Bayshores Funding,* 245 F.Supp.2d 884, 892 (N.D. Ill., 2002) ......9

## Statutes

Law No. 75, 10 P.R. Laws Ann. § 278 ........................................................................ 12, 13, 14, 15, 17, 18

28 U.S.C. §1404............................................................................................................2, 14, 15, 18

735 Ill. Comp. Stat. 5/2-209(a)(1), (7) and (10) ......................................................................... 8

## Rules

Fed. R.iv.P. 12(b)(2) .................................................................................................................... 18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ACE HARDWARE INTERNATIONAL HOLDINGS, LTD. as assignee of ACE HARDWARE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> MASSÓ EXPO CORP. and CAGUAS LUMBER YARD, INC., <br><br> Defendants. | CASE NO. 11-03928 <br><br> Honorable Amy J. St. Eve <br><br> RE:    CIVIL  ACTION |

## REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION

COME NOW, Massó Expo Corp. and Caguas Lumber Yard, Inc. (collectively "Massó"), through their undersigned attorneys, and respectfully submit the instant reply to plaintiff's Response to Massó's Motion to Dismiss or, in the Alternative, to Transfer This Action ("the Motion to Dismiss or Transfer") (Docket Nos. 15 & 19):

## I.    INTRODUCTION

On August 24, 2011, Plaintiff submitted a Response (Docket Nos. 34 & 36) to the Motion to Dismiss or Transfer ("the Response"). The Response is significant for the critical arguments it fails to properly refute and for its misguided emphasis on irrelevant matters. The instant action is a collection of moneys claim brought by a **Bermuda** entity against a **Puerto Rico** entity. This case does not involve a dispute regarding the payment of dividends, the ownership of stock or any other claim regarding any ownership interest Massó has or could have had in Ace Hardware Corporation ("Ace"), **who is not a party to this case**. In fact, as detailed in Massó's verified complaint filed in

Puerto Rico,[1] Ace, through intimidation and duress, forced Massó to accept a conversion scheme which purports to exclude Massó from the Ace cooperative.[2] Instead, Massó is now allegedly a minority shareholder of plaintiff Ace Hardware International Holdings, LTD ("Ace International"), a Bermuda entity which, admittedly, does not distribute dividends to its international retailers.

Plaintiff makes much of the contention that Ace International is a shell company, and that it is a mere conduit for Ace. See, Ex 1 to the Response, Docket No. 34. However, plaintiff cannot use the corporate structure it purposely created as both a sword and a shield: on one hand excluding Massó and other international retailers from their rightful participation in Ace and simultaneously arguing that Massó's former membership in Ace is a predicate for personal jurisdiction. This Court's jurisdictional calculus cannot simply ignore the current corporate structure plaintiff is trying to impose on Massó and must make its determination based on this purported corporate structure and the claims actually raised **in this case**.

Plaintiff in this case intends to collect money as an assignee of Ace for product ordered from Puerto Rico and shipped to Massó from places **other** than Illinois. As shown in the Motion to Dismiss or Transfer, the facts and contractual relationships relevant to **this case** do not establish personal jurisdiction over Massó. In all events, plaintiff, as assignee of the Membership Agreements originally executed between Ace and Massó, is contractually estopped from suing Massó in Illinois. Finally, because the Puerto Rico action may not be transferred to this District, both the convenience of the parties and the interests of justice support a transfer, under 28 U.S.C. §1404, to the United

---

[1] See, Ex. B to Massó's Memorandum in Support of Motion to Dismiss, Docket No. 19.

[2] Massó refused to sign the documents converting its shares of Ace into shares of Ace International and was forced to sign the same under threats of immediate termination. Among other things, Massó has requested the United States District Court for the District of Puerto Rico to declare null and void the Subscription Agreement with Ace International and reinstate Massó to its previous status as an Ace cooperative shareholder. However, none of these issues are before this Court and, for purposes of the Motion to Dismiss or Transfer, and without waiving any rights in the Puerto Rico action, Massó must be deemed a member and shareholder **of Ace International**, as alleged by plaintiff.

States District Court for the District of Puerto Rico, where an action encompassing all the claims and issues is already pending.

## II.   ARGUMENT

### A.   Massó's former membership in the cooperative with Ace is irrelevant to the determination of personal jurisdiction in this case.

Plaintiff's arguments in the Reponse simply miss their aim.  It is well-settled that "stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (citations omitted). Plaintiff, however, cites several cases involving membership in cooperatives to argue that Massó's membership in Ace is sufficient to establish personal jurisdiction over Massó. For example, plaintiff invokes *TruServ Corp. v. ST Yards, Inc.*, 2001 WL 743642 (N.D.Ill. 2001), to contend that Massó's membership in the Ace cooperative is sufficient to confer personal jurisdiction over Massó in this District. This contention is misplaced and misleading.

The facts in *TrueServ* are distinguishable.  In *TruServ*, members of a certain cooperative owned over 99% of the cooperative's voting stock and voting power. *Id.* at *1. Truserv, a cooperative which plaintiff pretends to analogize to Ace, did not "retain the yearly profits made from the sale of merchandise and services to its Members." *Id.* at *2. To the contrary, it distributed the profits to its members, based on their margins of each year's purchases. Id. It was based on this fact – a situation that is absent in the present case – that the court concluded that "[t]hrough their Membership in this Illinois-located cooperative, each member directly benefits from the Illinois-centered operations of TruServ." *Id.*

In the Response, plaintiff additionally argues among other things, that Massó (1) **was** one of the largest Ace members in the world (Response at 1); (2) that it **was** the third largest holder of Ace

3

stock (*Id.* at 4); (3) that it **received** millions of dollars in patronage dividends (*Id.*); (4) that its cooperative relationship with Ace **was** administered from Illinois (*Id.* at 5); and that (5) as member of the cooperative, Massó **received** co-op advertising funds and trainings from Illinois. *Id.* at 7. These arguments, however, are irrelevant to the jurisdictional analysis that pertains to this case because, as contended by plaintiff and third party Ace themselves,[3] the Ace-Massó cooperative relationship no longer exists, and the Ace International-Massó relationship lacks, from plaintiff's own perspective, the characteristics of the previous relationship.

Specific jurisdiction[4] lies when there is a finding of "minimum contacts." However, this finding is not based on just any contacts with the forum. To the contrary, "specific jurisdiction requires that the suit 'arise out of' or 'be related to' these minimum contacts with the forum state. We cannot simply aggregate all of a defendant's contacts with a state-no matter how dissimilar in terms of geography, time, or substance-as evidence of the constitutionally-required minimum contacts." *RAR, Inc. v. Turner Diesel, Ltd.*, *supra*, at 1277. *See also*, *Corus International Trading Limited v. Eregli Demir ve Celik Fabrikalari, T.A.S.*, 765 F.Supp.2d 1079, 1084 (N.D. Ill., 2011); *Edelson v. Ch'ien*, 352 F.Supp.2d 861, 868 (N.D. Ill., 2005). In particular, in a breach of contract case, "it is only the 'dealings between the parties **in regard to the disputed contract**' that are relevant to minimum contacts analysis." *Id.* Since plaintiff argues that there is no Ace-Massó relationship, and Ace is not even a party to this suit, Ace International, a Bermuda entity, cannot now here pretend to rely on the past membership of Massó in the Ace cooperative in a disjointed attempt to establish minimum contacts, and create *in personam* jurisdiction. Cases from this district

---

[3] Massó maintains that the Ace-Massó relationship should be restored because Ace forced Massó through intimidation and duress to convert its Ace stock into stock of Ace International. However, these arguments are the subject of the Puerto Rico lawsuit and not this case.

[4] In this case it is undisputed that there is no general personal jurisdiction over Massó, because Massó clearly does not have the "continuous and systematic general business contacts" with the forum. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

so hold. For instance, in *MAC Funding Corp. v. Northeast Impressions, Inc.*, 215 F.Supp.2d 978 (N.D.Ill. 2002), the corporate defendant entered into an agreement with MLP USA Inc. ("MLP") to purchase a printing press. The press was financed by plaintiff by way of a lease agreement between the parties. In their respective arguments regarding personal jurisdiction, both parties discussed defendant's contacts with Illinois related to its purchase agreement with MLP, in addition to the contacts between plaintiff and defendant. The court found that, since MLP was not a party to the action, "the purchase agreement between MLP and [defendant] is irrelevant in determining whether I have personal jurisdiction over [defendant] or the guarantors." *Id.* at 981.

Against the backdrop of the *MAC Funding* case, it must be observed that Ace is not a party to this action. Massó's previous membership in the Ace cooperative may not be considered in the determination of whether this Court has personal jurisdiction over Massó, as this relationship allegedly no longer exists and thus this action cannot possibly "arise from" the same. Ace assigned its alleged rights in the instant collection claim to Ace International. Although generally an assignee stands in the shoes of the assignor for all relevant purposes, this is not the situation here, because the assignment and conversion scheme between Ace and Ace International completely altered the relationship Massó had with the Ace cooperative and purportedly (and unjustifiably) terminated the same.

Ace's Quarterly Report for the period ended July 2, 2011 provides as follows:

Effective in 2011, the Company [*i.e.*, Ace] restructured its international operations into a **stand-alone legal entity with its own management team and board of directors** as opposed to a division within the Ace cooperative structure. This entity also has its own subsidiaries. The new entity ("Ace Hardware International Holdings, Ltd.") is a majority-owned and controlled subsidiary of the Company with **a noncontrolling interest owned by its international retailers**. **International retailers no longer own shares of stock in the Company or receive patronage dividends**.

**Ex. 1** at 6 (emphasis added). <u>See also</u>, Ex. 1 to Docket No. 34, Declaration of Pete Ting at ¶7

(accepting that Massó **no longer owns** Ace shares). Indeed, Ace International has not set forth a single argument or piece of evidence regarding **its own contacts** with Massó in this forum.

Thus, from Ace's perspective, Massó's relationship with Ace has been completely severed. Instead of being a member of the Ace cooperative, Massó is now a member of a stand-alone legal entity with its own management team. Contrary to plaintiff's averments regarding Massó's position in the top tier of the co-op members and its arguments regarding the retailers' control of Ace's Board of Directors, Massó now allegedly has a non-controlling interest in a Bermuda entity. Most importantly, Massó supposedly does not own any shares of stock in Ace nor is it entitled to patronage dividends.

In other words, the factual elements that contributed to a finding of jurisdiction in *Truserv* and other co-op cases cited by plaintiff are not present in this case, given that Ace is not a party to this action and that the alleged actual relationship between Ace International and Massó does not involve the benefits of cooperative membership outlined in those cases. Simply put, this Court should reject Ace International's efforts to use its corporate structure to exclude Massó from the Ace cooperative and simultaneously claim that said corporate structure is just a shell and that Massó's prior membership in Ace provides the necessary predicate for specific jurisdiction. Such arguments are inconsistent and defy logic.

In light of the above, Massó's prior membership in Ace, its ability to vote for the board of directors of Ace, its participation in shareholder meetings or other annual meetings of Ace, its receipt of patronage dividends from Ace, its execution of Ace Subscription Agreements with Ace, the content of Ace's By-Laws, its participation in Ace co-op advertising and training programs and any other fact that has do to with Massó's affiliation in Ace and the operation of the Ace cooperative, *see*, Response at 2-8, are simply not relevant to the jurisdictional issues raised in the

instant lawsuit.[5]

**B.    Ace's unilateral activities in Illinois are irrelevant to this Court's determination of specific jurisdiction.**

The law is clear that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Evidently, many if not all of an in-state plaintiff's activities will take place in the forum State. However, the focus of the inquiry is not centered on said activities, but on those conducted **by the defendant**.

In support of its argument that jurisdiction is proper, plaintiff enumerates some "facts" that do not demonstrate any activities by Massó in Illinois, but merely pretend to show unilateral conduct not of Ace International, but of its pretended assignor, third party Ace. For example, plaintiff argues (1) that Ace's credit review meetings take place in Illinois; (2) that Ace's ACENET software is supported from Illinois; (3) that Ace prints its billing statements in Illinois; (4) that Ace's accounts receivable are administered in Illinois; (5) that Ace employees organize annual meetings or conventions from Illinois; (6) that Ace participated in Massó's bankruptcy reorganization process (which obviously did not take place in Illinois) through counsel from Illinois; (7) that Ace's internal inventory management takes place in Illinois; and (8) that Ace Illinois employees would authorize the release of merchandise delivered to Massó from other locations or would pay vendors directly from Illinois. *See*, Response at 6-8. As with the case of the activities regarding Massó's membership in third party Ace's cooperative, while the sheer number

---

[5] In addition, it must be noted that plaintiff makes reference to alleged loans provided by Ace and to a Guaranty of Credit signed by other "Defendant-related entities." *See*, Docket No. 34 at 5 and 8. Neither these alleged loans nor Guaranty of Credit, executed by third parties, are at issue in this case. Hence, pursuant to *RAR, Inc.* and *MAC Funding Corp.*, they are also irrelevant to the jurisdictional analysis.

of these facts might have surface appeal, they are wholly irrelevant to this Court's jurisdictional inquiry. All of the facts outlined above and in plaintiffs' Response and supporting declaration involve activities or actions **performed by Ace (as former principal), not by Massó**. Due Process demands that the Court look at what Massó voluntarily did to submit itself to the jurisdiction of this forum. *See*, *Burger King*, 471 U.S. at 475 ("Jurisdiction is proper ... where the contacts proximately result from actions by the defendant **himself** that create a substantial connection with the forum State.") (emphasis added) (quotation omitted).

After sifting through all the alleged facts in plaintiff's Response, the only facts that could arguably have a bearing on the Court's jurisdictional analysis are: (1) the signature of the Membership Agreements and (2) the fact that on one occasion Massó placed an order for paint that was manufactured and labeled in Illinois. **All** of the remaining facts in plaintiff's response (1) either involve a past and non-existent relationship between third-party Ace and Massó,[6] or (2) involve unilateral activities of Ace, in its capacity as former principal of Massó. Even if the Court were to accept the past dealings between Ace, a non-party, and Massó as part of the analysis, the only two arguably significant facts demonstrate that Massó **does not** have sufficient minimum contacts with this forum.[7] And those prior transactions are, for the reasons discussed in this submission, insufficient to confer to this Court personal jurisdiction over Masso.

### C. The execution of the Membership Agreements does not establish personal jurisdiction over Massó.

In ruling on a motion to dismiss for lack of personal jurisdiction, "[a]ny conflicts in the

---

[6] Plaintiff, for instance, alleges that Ace holds bi-annual conventions all throughout the country, and that this year the convention was held in Chicago Illinois. However, plaintiff fails to allege that Massó actually attended said convention.

[7] In a footnote, plaintiff alleges that jurisdiction is proper under 735 Ill. Comp. Stat. 5/2-209(a)(1), (7) and (10). However, the facts on which plaintiffs bases this argument all involve Massó's prior membership in the Ace cooperative and thus are irrelevant to the Court's determination. In any event, in the absence of sufficient minimum contacts, as explained above, Due Process mandates dismissal of the instant action, regardless of whether any particular single contact could fit within one of the categories of the Illinois long-arm statute.

pleadings and affidavits are to be resolved in the plaintiff's favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs." *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 905 (N.D.Ill. 2003). Plaintiff has not refuted any of the facts in the Declaration of Gildo Massó (Docket No. 19, Ex. A). In particular, plaintiff does not negate (1) that the initial contact between Ace and Massó took place outside of Illinois; (2) that all negotiations concerning the Membership Agreements took place in Puerto Rico; (3) that Massó did not execute the Membership Agreements in Illinois; (4) that the Ace products sold by Massó are shipped from a location other than Illinois; and (5) that support services for these products are not provided in Illinois. *Id.*

However, plaintiff argues (1) that the Membership Agreements executed between Ace and Massó were not effective until accepted by Ace in Illinois; (2) that under said agreements all orders for merchandise shall be transmitted to Ace at its offices in Illinois; and (3) that Massó's merchandise orders would come in electronically into Illinois through Ace's "ACENET" software. None of these facts establish the required minimum contacts.

First, it is beyond any question that "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR, Inc.*, 107 F.3d at 1277 (*citing Burger King*, 471 U.S. at 478). *See also, United Financial Mortgage v. Bayshores Funding*, 245 F.Supp.2d 884, 892 (N.D. Ill., 2002). In addition, it has been held that subjecting a party to personal jurisdiction in the state where the supplier's billing office and database happen to be located, even though defendant is serviced from another location entirely, offends traditional notions of fair play and substantial justice. *See, e.g., Pres-Kap, Inc. v. System One, Direct Access, Inc.*, 636 So.2d 1351, 1353 (Fla.App. 3 Dist. 1994).

Massó cannot be submitted to the jurisdiction of this Court merely because Ace, a non-party

to this action, electronically received an order that is placed in Puerto Rico and internally transmits said order to Alabama, where the order is actually dispatched. The fact that Ace internally and unilaterally performs inventory management or computer systems administration from Illinois is not indicative of any contact between Massó and this forum. To the contrary, this reflects the reality that, although Illinois might be the center of some of Ace's operations, its activities are so far flung that an individual retailer such as Massó can do business with Ace and receive merchandise without ever having the personal contacts with Illinois which would fulfill the required constitutional predicaments for personal jurisdiction over Masso in this action.

### D. The shipment of paint from Illinois is a unilateral activity over which Massó has no control and cannot serve as a predicate for personal jurisdiction.

Ace International argues that, although Ace's products sold to Massó are shipped from locations other than Illinois, Ace manufactured paint for Massó from Illinois. The fact that this paint was manufactured in Illinois, rather than in other Ace locations around the country, was a matter of Ace's choice, over which Massó had no control, and does not constitute a purposeful or voluntary availment by Massó to the personal jurisdiction of the Illinois courts. Plaintiff's arguments to the contrary are devoid of merit.

In *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), the Seventh Circuit Court of Appeals held that "although [the defendant] in a sense caused the activity in Wisconsin by placing the order [for manufacture of product], the contract between the parties left [the plaintiff] in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally." *Id.* at 603. Although the holding in *Lakeside* has been distinguished and limited, it has never been overruled. *See*, *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 763 (2008). In fact, after *Citadel* was decided, a Court from this district in *Dayton Superior Corp. v. Spa Steel Products, Inc.*, 585 F.Supp.2d 1041

(N.D.Ill. 2008) applied the holding in *Lakeside* to a fact pattern similar to the one here.

In *Dayton*, a New York based defendant placed and received product orders from New York, and its contacts with Illinois were electronic e-mails and telephone calls. To the defendant, it was immaterial from which of the plaintiff's distributor locations the orders were filled. The *Dayton* Court, citing *Lakeside*, concluded that "[defendant's] belief, which we may assume existed, that [plaintiff] would choose to perform its contractual obligations in [Illinois] does not constitute an invocation of the benefits and protections of [Illinois'] laws; [defendant] did not 'purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 1042 (*quoting Lakeside*, 597 F.2d at 603).

Similarly, for years Massó received products from Ace sourced in locations other than Illinois, and its only contact with Illinois in that regard was the electronic transmittal of its orders -- a fact that is given disproportionate weight by plaintiff. The fact that its former principal manufactured a product from an Illinois location was a unilateral choice made by Ace. It is immaterial to Massó whether the paint manufactured by Ace was produced in Illinois or at another Ace location, and Massó cannot be forced to litigate in Illinois simply based on this isolated event over which it had no control.

### E. Plaintiff has not refuted Massó's argument to the effect that the forum-selection clause in the Membership Agreements is not self-executing in the absence of minimum contacts.

Plaintiff does not refute Massó's argument that a permissive forum selection clause is not self-executing, and that this Court should not exercise personal jurisdiction over Massó not only because Massó does not have sufficient minimum contacts with the forum, but because the forum-selection clause at issue in this case is **unenforceable as a matter of contract and Puerto Rico law**. Instead, plaintiff relies on the fact that Massó signed more than one Membership Agreement.

The fact that an identical Membership Agreement was signed for each one of Massó's stores does not create more contacts with the forum, nor does it alter in any way the permissive nature of the forum selection clause or the fact that the same specifically incorporates Puerto Rico law by stating that it will not be enforced if contrary to the laws of the state of the Ace member. *See*, Verified Complaint, Docket No. 1, Ex. A., Art. V(1). The cases cited by plaintiff are unavailing and contradict this flawed contention.

First, plaintiff's reference to *Northwestern Nat. Ins. Co. v. Donovan*, 916 F.2d 372 (7th Cir. 1990) is utterly in error. *Northwestern* clearly involved a **mandatory** forum-selection clause. *Id.* at 374 ("Venue, at the Company's option for litigation and/or arbitration, **shall** be in the County designated on the front page under the description of the Company's address.") (emphasis added). The same can be said for the clause at issue in *American Roller Co., LLC v. Foster Adams Leasing, LLP*, 421 F.Supp.2d 1109 (N.D.Ill. 2006). Although the clause implicated in that case allowed the parties to sue in South Carolina or Illinois, it was **mandatory** in that the parties could not bring suit anywhere else.[8] *Id.* at 1112. Further, *American Roller* involved a request for transfer, and personal jurisdiction was not at issue. Finally, the case of *John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors Inc.*, 22 F.3d 51 (2d Cir. 1994), also cited by plaintiff, does not even discuss the concept of personal jurisdiction. That case merely holds that an agreement between the parties stating that Greek courts shall have jurisdiction over the controversy did not deprive New York courts of jurisdiction over the matter. Given that the Greek defendant did not even argue that there was no personal jurisdiction, it is difficult to understand why plaintiff cites this case in the context of the issues presented for threshold resolution in the instant action.

Plaintiff also places much emphasis on a number of cases from the District Court of Puerto

---

[8] "In contrast, a permissive forum selection clause evidences the parties' intent that the chosen state is a possible, but not the sole, arena in which a suit can be filed". *Saxena v. Virtualabs, Inc.*, 2002 WL 992636 (N.D. Ill. 2002).

Rico transferring actions under Puerto Rico's Law No. 75 of June 24, 1964, 10 P.R. Laws Ann. § 278 *et seq.* ("Law 75"). Relying on these cases, plaintiff claims that Puerto Rico law does not prohibit this action from proceeding in Illinois. This argument misses the mark completely, as it does not account for the fact that those cases were not decided through the application of Puerto Rico law; rather, they were decided under federal law. *See, for example, Antilles Cement Corp. v. Aalborg Portland A/S*, 526 F.Supp.2d 205, 209 (D.P.R. 2007) (cited by plaintiff) (deciding to transfer a Law 75 action after considering the factors in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), and explaining that "cases decided under *Bremen* have similarly bypassed the Law 75 forum limitations **while applying federal common law**.") (emphasis added); *Puerto Rico Surgical Technologies, Inc. v. Applied Medical Distribution Corp.*, 2010 WL 4237927 (D.P.R. 2010) (also cited by plaintiff) (explaining that "[w]hen interpreting [forum selection clauses] in diversity cases, federal law has been applied").

Massó is fully aware of these precedents. *See*, Docket No. 19 at 11 and n. 6. However, as discussed in Massó's memorandum of law and as shown above, the Puerto Rico Law 75 cases that have been transferred out of Puerto Rico have applied federal law in diversity and not Puerto Rico law. In this case, federal common law is inapplicable, given that the enforceability of the forum selection clause at issue is specifically subject to Puerto Rico law as a matter of contract. *See*, Verified Complaint, Docket No. 1, Ex. A., Art. V(1) (stating that suit "may be instituted in an appropriate court in the state of Illinois **unless institution of such suit in Illinois is prohibited by the laws of the jurisdiction in which the licensed location is situated**.") (emphasis added).

Of course, "[p]arties to a contract are free to include any terms they choose, as long as those terms are not against public policy and do not contravene some positive rule of law." *Green v. Safeco Life Insurance Co.*, 312 Ill.App.3d 577, 581 (2000). Ace drafted and executed a Membership

Agreement that expressly precludes it (and thus its assignee Ace International) from bringing suit related to the membership agreement in Illinois if such suit would be prohibited by the laws of Puerto Rico. The laws of Puerto Rico expressly prohibit the litigation of any controversy related to a dealer's contract outside of Puerto Rico. a. 10 P.R. Laws Ann. § 278(b-2).[9] Plaintiff no doubt wants to force Massó to litigate its Law 75 claims in this forum, either by seeking transfer of the Puerto Rico action to this forum (see, Docket No. 34 at 16 n. 8) or by forcing Massó to file what could be a compulsory counterclaim in this case. Regardless of the merits of Massó's defenses or its claims in the Puerto Rico action, plaintiff bound itself to litigate these actions in Puerto Rico by assuming a contract expressly incorporating Law 75's prohibition against choice of law and forum provisions. As a result, plaintiff is contractually estopped from contesting the dismissal or transfer of this action to Puerto Rico.

**F.     In the alternative, this action should be transferred to the District Court of Puerto Rico pursuant to 28 U.S.C. §1404.**

**1.     The convenience of the parties and the interests of justice favors transfer.**

As an intitial matter, plaintiff argues that Massó's request for transfer under 28 U.S.C. §1404 must be denied because allegedly Massó has not made a showing of inconvenience. This argument is also misleading. The case of *Landis v. Warner Chilcott (US), LLC*, 2010 WL 5373664 (N.D.Ill. 2010), on which plaintiff relies, clearly states that the convenience/inconvenience analysis is part of the fifth private factor considered in the §1404 analysis, not a threshold question as plaintiff would have this Court believe. Plaintiff would have this Court ignore the remaining factors of the analysis that, when properly applied, demonstrate that the transfer is appropriate.

---

[9] *See also, Maxon Engineering*, 2001 PR App. LEXIS 2028 (P.R. Ct. App. Nov. 30, 2001) (forum selection clause forcing the parties to litigate in Pennsylvania held unenforceable under Law 75). *Location Travel Corp. v. Business Travel International BV*, 2007 PR App. LEXIS 2243 (P.R. Ct. App. Aug. 31, 2007) (forum selection clauses are contrary to Puerto Rico's Law 75). Federal courts must give "proper regard" to rulings by intermediate state appellate courts. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S. Ct. 1776, 18 L. Ed. 2d 886 (1967).

Plaintiff's Response, makes much of the fact that it allegedly requires twelve Illinois witnesses to prove what is essentially a collection of moneys case. Defendants do not agree that the testimony of all the purported witnesses identified by plaintiff is relevant or admissible to the issues at hand. Putting that aside, however, the location of the witnesses does not disfavor transfer. Just as Plaintiff's alleged witnesses reside in Illinois, all of Defendants' witnesses reside in Puerto Rico and would be equally inconvenienced by having the litigation here.

Moreover, as explained above, because the Membership Agreement expressly incorporates Law 75's provisions against a choice of law and forum other than Puerto Rico, the transfer of the Puerto Rico action to this District, even if warranted under 28 U.S.C. §1404 (which is denied) would be contrary to the terms of the contract between the parties. Hence, the Puerto Rico action may not be transferred. In these circumstances the convenience analysis, as well as the interests of justice and judicial economy, is tilted in favor of transfer of this action to Puerto Rico.

As Massó is a Puerto Rico corporation with its principal and only place of business in Puerto Rico, all of its witnesses reside in Puerto Rico. The same is true of all the documentary evidence in its possession, which naturally is located in Puerto Rico. But even if the convenience of the parties and witnesses and the access to sources of proof would not favor one district over another, it is certainly more convenient to have this action consolidated with the Puerto Rico action, which, as we saw above, should not be transferred here based on the language of the agreement betweem the parties. See, *Keppen v. Burlington Northern R. Co.*, 749 F.Supp. 181, 183 (N.D.Ill. 1990) (holding that even though the convenience of witnesses did not favor one party over the other, "[i]t certainly will be more convenient for all parties involved to prosecute, in one forum, all of the claims arising from the same transaction.").

The interest of justice also favors transfer.[10] This interest refers to "such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). This court has previously recognized the strong policy in favor of transferring a case to the district where a related action is pending. *Keppen*, 749 F.Supp. at 184; *see also, Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

In this regard, it must be noted that, although plaintiff's action was filed first in this District, the Seventh Circuit does not rigidly adhere to the "first to file rule," and instead considers the timing of each filing in connection with the transfer factors set forth in section 1404. *See, Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir.1995); *Medj USA v. Jobst Inst.*, 791 F.Supp. 208, 210–11 (N.D.Ill. 1992).

In *Kim v. Kim*, 324 F.Supp.2d 628 (E.D.Pa. 2004), the court transferred a case to the Northern District of Illinois even though the Pennsylvania action had been filed first, in consideration of all the section 1404 factors. The court, after dismissing some claims against some defendants for lack of personal jurisdiction, concluded that "[b]ecause of jurisdictional problems, the action cannot proceed as a whole in this Court. A transfer to the Northern District of Illinois, where the Chicago Action is currently pending, will permit resolution of this dispute in a single forum and, if the judge deems it appropriate, in a single consolidated action." *Id*. at 643.

In *KPMG Consulting, Inc. v. LSQ II, LLC*, 2002 WL 1543907 (S.D.N.Y. 2002),[11] plaintiff filed its action in New York on November 2, 2001. Subsequently, on January 15, 2002 defendant

---

[10] "The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

[11] The requirements for transfer under section 1404 are substantially similar in all federal jurisdictions. In light of this, although the cases of *Kim* and *KPMG Consulting* were decided in other districts, the similarity of their fact pattern to the facts of this case makes their holding highly persuasive.

16

commenced an action in Florida. Prior to the resolution of defendant's motion to transfer the New York action, the Florida court had determined that the Florida action could proceed in Florida regardless of the outcome of the motion to transfer the New York action. Consequently, the Court in *KPMG* concluded that "[c]oncurrent proceedings in Florida and this Court would needlessly waste judicial resources and hamper timely adjudication in both courts, as the parties, witnesses, subject matter and many of the factual disputes are virtually identical." *Id*. at *5.

In this case, both the convenience of the parties as well as the interests of justice militate in favor of transfer. As in *Kim* and *KPMG*, regardless of the fact that Ace International filed suit first, its claims should be transferred to Puerto Rico, because the Puerto Rico claims -- which by far exceed the scope and also encompass issues directly related to the collection claim here and involve an entity that is not a party to this lawsuit --cannot be transferred here **as a matter of contract**. Since the action could never proceed as a whole in this Court, it simply makes no sense to allow both actions to proceed simultaneously. Such a result is not only inconvenient for both parties, but is an unnecessary waste of judicial resources.

### 2. The situs of material events is Puerto Rico.

It must be noted that, while plaintiff's complaint is a 6-page collection action, Massó's Puerto Rico complaint is a 41-page, broad, detailed and highly particularized pleading involving nullity of contract and violations to Puerto Rico's Law 75, among other subjects. Plaintiff's complaint is but the tip of an iceberg whose main component lies elsewhere, in this case in Puerto Rico. It simply makes no sense for this Court to retain a collection case where the potential counterclaim is much larger and complex than the original claim, when there is another action pending in Puerto Rico, encompassing all claims and issues between all the parties involved.

For example, when determining whether a dealership relationship exists under Law 75,

courts look at the following factors or activities conducted by the dealer in Puerto Rico: "promotion of the product, keeping an inventory, fixing prices, delivery and billing responsibilities, authority to extend credit, advertising campaigns, assumption of risk, purchasing the product, maintaining facilities, and offering product-related services to clients." *Re-Ace, Inc. v. Wheeled Coach Industries, Inc.*, 363 F.3d 51, 55-56 (1st Cir. 2004) (citation omitted). In Massó's case, all of these events take place not in Illinois but in Puerto Rico where all of Massó's activities as Ace's exclusive distributor have been conducted. In comparison, the narrow events related to plaintiff's collection of money claim (purchasing and invoicing) are collateral.

### 3. Public factors also favor transfer.

Similarly, any relation of the State of Illinois to a collection claim pales in comparison to the relationship Puerto Rico has to a Law 75 controversy, especially given Law 75's public interest in the protection of local distributors. *See*, Docket No. 19 at 7-8. On the other hand, while certainly this Court (and any federal court for that matter) is capable of hearing a case brought under Puerto Rico's Law 75, it is undeniable that Puerto Rico courts are more intimately familiar with said statute, and there is certainly a compelling public interest in having Puerto Rico courts decide cases under Puerto Rico law, especially in the context of Law 75, a statute which has proven fertile ground for litigation between foreign principals and local distributors. In addition, the duress and coercion imposed upon Massó had their effect in Puerto Rico, where the damages inflicted upon Massó had their direct impact. In sum, nothing is gained by keeping a collection of moneys claim in this Court's docket, when it could be easily be transferred and consolidated with the Puerto Rico action.

**WHEREFORE**, Massó respectfully requests that this Honorable Court grant its Motion to Dismiss and, consequently, enter judgment dismissing plaintiff's complaint for lack of personal

jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), or in the alternative, enter an order transferring the instant action to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. §1404.

**RESPECTFULLY SUBMITTED**.

Dated: September 19, 2011.

**WE HEREBY CERTIFY:** that on this same date this motion was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record in this case.

**ADSUAR MUÑIZ GOYCO
SEDA & PÉREZ-OCHOA, P.S.C.**
*Counsel for Massó*
PO Box 70294
San Juan, PR 00936-8284
Tel.: 787.756.9000
Fax: 787.756.9010

By: /s/ Eric Pérez-Ochoa          By: /s/ Pedro J. Santa-Sánchez
ERIC PÉREZ-OCHOA                  PEDRO J. SANTA-SÁNCHEZ
USDC- PR No. 206314               USDC- PR No. 126209
Admitted PHV                      Admitted PHV
Email: epo@amgprlaw.com           Email: p.santa@amgprlaw.com

**LÁZARO LAW GROUP**
321 S. Plymouth Court
Suite 1400
Chicago, IL 60604
Tel: 773.655.7011
Fax: 773-305-4068
E-mail: rafalazaro1@gmail.com

/s/ Rafael E. Lázaro
Rafael Eduardo Lázaro
As Local Counsel Pursuant to Local Rule 83.15